# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

LARRY GOLDEN
*Petitioner*

v.

Google, LLC
*Defendants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA—

SAN FRANCISCO IN 4:22-cv-05246-RFL

JUDGE RITA F. LIN

## PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY AFFIRMANCE

LARRY GOLDEN
740 Woodruff Rd., #1102
Greenville, S.C. 29607
(864-288-5605)
Atpg-tech@charter.net

Appearing ProSe

August 1, 2024

## REQUIREMENTS FOR SUFFICIENCY

Statement of Claims Rule 8(a)(2): A short and plain statement of the claim showing that the pleader is entitled to relief. Must include **legal sufficiency** and **factual sufficiency**. Legal sufficiency examines only the face of the pleadings and requires all of the elements to be presented to be plead. For information about factual sufficiency, see the following cases. A pleading must show sufficient facts in short and plain terms that entitle the plaintiff to relief. Cases for Reference on Pleading issues:

a. *Conley v. Gibson*: setting the standard- we do not want the pleadings bar to be too high as to hurt justice, facts will be put in discovery later. The purpose of the pleadings is mostly to give notice as to the claim and the grounds for relief. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." THE NO SET OF FACTS TEST: is there no set of facts under which you can recover relief from what you have set forth in your pleading?

b. *Dioguardi v. Durning*: "'only a short and plain statement of the facts' is necessary. It must be enough to put defendant on notice."

c. *Bell Atlantic Corp. v. Twombly- Regarding FRCP Rule 9*: The Supreme Court required more than just substantive law to get into court, facts must also be plead." This is the PLAUSIBILITY TEST: "Pleadings must show that the case is plausible not probable."

d. *Ashcroft v. Iqbal*: "further develops the need for plausible facts in a pleading. A claim of policy is not enough to show religious discrimination, there must be facts; recitals of elements of a cause of action, supported by mere conclusory statements do not suffice."

## STATEMENT OF FACTS

The Federal Circuit on 09/08/2022, in *Larry Golden v. Google LLC*; Case No. 22-1267 — "VACATED AND REMANDED" the relevant Case No: 22-1267 Document 15; back to the District Court "to be filed and request service of process". The Federal Circuit determined the complaint, "includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and

9,069,189" … "in a relatively straightforward manner" … and that the [Circuit] "express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous."

In a Three-Judge Panel DISCUSSION: "Under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 … [T]his standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). A plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted) … this court has explained that a plaintiff … must plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged."

"Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 … It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner …[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart.…"

In the Federal Circuit's order to vacate and remand, the Circuit determined Golden's complaint is not facially frivolous; has alleged enough facts to state a claim to relief that is plausible on its face; has plead 'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged; has plead facts that give rise to more than a sheer possibility that a defendant has acted unlawfully; has included a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189; attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner; and, has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart.

The Federal Circuit "conclude[d] that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart." Which means Golden submitted enough factual information on literal infringement, infringement under the doctrine of equivalents, induced infringement, contributory infringement, willful infringement, and joint infringement to Judge Rita F. Lin in this Northern District of California Court case.

## THE CIRCUIT'S OPINION IS *"PRECEDENTIAL"*

The Circuit's opinion, "under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) is precedential.

According to Rule 32.1 Citing Judicial Dispositions, the non-precedential opinion issued in *Larry Golden v. Google LLC*; Case No. 22-1267 cannot be prohibited or restricted from the designation of "precedential", in this current case.

(a) *CITATION PERMITTED.* A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been:

(i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and

(ii) issued on or after January 1, 2007.

Rule 32.1 is a new rule addressing the citation of judicial opinions, orders, judgments, or other written dispositions that have been designated by a federal court as "unpublished," "not for publication," "non-precedential," "not precedent," or the like.

Rule 32.1 addresses only the *citation* of federal judicial dispositions that have been *designated* as "unpublished" or "non-precedential"—whether or not those dispositions have been published in some way or are precedential in some sense.

> *Subdivision (a).* Every court of appeals has allowed unpublished [non-precedential] opinions to be cited in some circumstances, such as to support a contention of issue preclusion or claim preclusion.

Rule 32.1(a) is intended to replace these inconsistent standards with one uniform rule. Under Rule 32.1(a), a court of appeals may not prohibit a party from citing an unpublished [non-precedential] opinion of a federal court for its persuasive value or for any other reason.

Rule 32.1(a) applies only to unpublished [non-precedential] opinions issued on or after January 1, 2007. The citation of unpublished [non-precedential] opinions issued before January 1, 2007, will continue to be governed by the local rules of the circuits.

The instant motion for summary affirmance satisfies the high standard governing award of such relief. "A party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987).

This motion is ripe for summary affirmance because not only has Judge Rita F. Lin violated the provisions governing requirements for *sufficiency* under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and the "*precedential*" opinion [Rule 32.1 Citing Judicial Dispositions] issued in *Larry Golden v. Google LLC*; Case No. 22-1267; she also failed to honor the legal interpretations of doctrines on how cases are adjudicated in fairness to the movant. The doctrines are:

1. the doctrine of "*vertical stare decisis*";
2. the "*due process*" doctrine for depriving a person of their property;
3. the doctrine of a 12(b)(6) dismissal; and,
4. the doctrine of "*res judicata*".

### *Vertical stare decisis*

Vertical stare decisis binds Judge Rita F. Lin to follow strictly the decisions of higher courts within the same jurisdiction (e.g., the Northern District of California Court must follow the decisions of the U.S. Court of Appeals for the Federal Circuit). The Supreme Court defines vertical stare decisis as the doctrine, "a lower court [Judge Rita F. Lin] must strictly follow the decision(s) handed down by a higher court within the same jurisdiction".

Judge Rita F. Lin engages in vertical stare decisis when she applies precedent from the higher court. For example, if the Northern District of California Court [Judge Rita F. Lin] adhered to a previous ruling from the United States Court of Appeals for the Federal Circuit, in *Larry Golden v. Google LLC*; Case No. 22-1267, that would be vertical stare decisis.

When Judge Rita F. Lin applies the decision from the higher court, [*vertical stare decisis*] it bars Google from challenging whether Golden has pled enough facts and provided sufficient notice to the Defendant Google. The Federal Circuit's ruling: "the complaint includes a detailed

claim chart mapping features of an accused product, the Google [] Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" ... 'in a relatively straightforward manner'", indicates Golden has pled enough facts and any challenges Judge Rita F. Lin allows should be presented to a jury.

Golden believes Judge Lin's motivation to disregard the decisions of the higher court, stem from systemic racism and the conspiracies she joined as a co-conspirator to deprive Golden of his intellectual property and devalue the property's worth.

**"Due Process"**

The Fifth Amendment states, "No person shall...be deprived of life, liberty, or property, without due process of law;", and among other things, the government [Judge Rita F. Lin] cannot deprive Golden of his property without following certain procedures. This is known as "due process," which is further broken down into two concepts: procedural due process and substantive due process.

The Supreme Court has explained that [p]rocedural due process rules are meant to protect persons [Golden] not from the deprivation, but from the mistaken [unfair] or unjustified deprivation of his property. *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

As the Supreme Court summed up in *James v. Campbell*, 104 U.S. 356, 358 (1882), a case concerning the alleged appropriation of a patent by the Government:

> "[A patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser."

The Court of Federal Claims Senior Judge Bruggink, in multiple cases, has deprived Golden of his property through unfair means that resulted in the loss of his property and the continued appropriation or use by the government without paying Golden just compensation. Judge Bruggink and Judge Lin are co-conspirators in the same already established conspiracy.

Judge Rita F. Lin's procedural due process violation under the Fifth Amendment Clause of the United States Constitution is a violation of Golden's civil rights when the offense is motivated by race discrimination.

6

**12(b)(6)**

When deciding a motion to dismiss under Rule 12(b)(6), Judge Rita F. Lin must accept as true all factual allegations in the complaint, which means all factual evidence of literal infringement determined by the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267, and must draw inferences in a light most favorable to the Golden. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay [examine] the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Store Co.*, 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)), and *certainly not to do everything, including lying, avoiding the issues, and adjudicating outside the Court's jurisdiction,* to overturn the decision of the higher United States Court of Appeals for the Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267.

"The issue on a motion to dismiss is not whether the Golden will prevail, but whether Golden is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F. Supp 784, 786 (D. Conn. 1990) (citing *Scheuer*, 416 U.S. at 232).

**Doctrine of *Res Judicata***

The doctrine of res judicata seeks "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *See State v. Ellis*, 466, 497 A.2d at 990

Judge Rita F. Lin's theories of "issue preclusion" does not apply and is inapplicable to valid claims submitted with valid patents under § 271. Golden has the right to bring an action against Google for the recovery of damages any time Google appropriates or uses Golden's patented invention(s) without license or legal right to do so.

Judge Rita F. Lin's theories of jurisdiction and the boundaries the Judge applies to *"whoever"* under § 271(a)(b)(c), if allowed to stand, rewrites patent infringement under 35 U.S.C. § 271(a) (b)(c). Judge Rita F. Lin's non-infringement theories create "loopholes" for Google to infringe Golden's patents without liability:

## SUMMARY AFFIRMANCE IS RIPE BECAUSE JUDGE RITA F. LIN, ALLEDGEDLY WITH KNOWLEDGE, WILLFULLY VIOLATED GOLDEN'S SEVENTH AMENDMENT CONSTITUTIONAL RIGHT TO A TRIAL BY JURY

Judge Rita F. Lin knowingly violated Golden's civil rights [42 U.S.C. section 1983] when she deprived Golden of his guaranteed constitutional right to a trial by jury under the Seventh Amendment of the United States Constitution because of his race.

No particular form for a jury trial demand is prescribed by California statute or court rule. (See Code Civ. Proc. § 631(a): "[t]he right to a trial by jury as declared by Section 16 of Article I of the California Constitution shall be preserved to the parties inviolate"; "[t]rial by jury is an inviolate right—not to be violated or broken—and shall be secured to all").

A demand may be made either in writing or orally on the record (i.e., Golden made the demand in the initial complaint at Dkt. 1; and, in the case management statement at Dkt. 34).

[Cal. Rules of Court, rule 3.727. Subjects to be considered at the case management conference: "(13) Whether a jury trial is demanded, and, if so, the identity of each party requesting a jury trial; (14) If the trial date has not been previously set, the date by which the case will be ready for trial and the available trial dates; (15) The [] length of trial"]

It has been over twenty-five years since the Court last assessed the scope of the constitutional right to a jury in a patent-infringement case. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). More remarkable, that decision has been its only direct pronouncement on the matter in the 230 years that patent infringement has been actionable [Act of Apr. 10, 1790, ch. 7, §§ 1, 4, 1 Stat. 109, 110, 111 (first federal patent act)].

The Seventh Amendment requires juries in "Suits at common law" [U.S. CONST. amend. VII]; law courts always offered juries; and early juries tried nearly all infringement and validity issues.

Patent infringement is an issue-of-fact tried by a jury under the Seventh Amendment. Typically, a jury is asked to decide whether the evidence shows that the defendant is performing the claimed invention. Many litigants now prefer juries whenever the Constitution says they can demand them, and they always can when the patentee seeks damages at trial (with or without injunctive relief). Patent cases were "tried at law in the 18th century, and there is no dispute that infringement cases today must be tried to a jury." *Markman*, 517 U.S. at 377.

*Markman*, in fact, involved a patentee who sought damages and injunctive relief, the same as Golden in this current case, and yet neither the parties nor the Court thought twice in assuming that the patentee's case cleared the first step of the Court's historical test.

The Court quickly cleared the first step because the petition for review noted that the patentee [same as Golden] sought damages. Petition for a *Writ of Certiorari* at *Markman*, 517 U.S. 370 (No. 95-26), 1995 WL 17063340, ("In a patent infringement action for damages, is there a right to a jury trial under the Seventh Amendment of the United States Constitution of genuine factual disputes about the meaning of a patent?").

The Seventh Amendment uses the term "common law" to refer to cases in which the right to jury trial was preserved. The Supreme Court resolved the difficulty by stressing the fundamental nature of the jury trial right and protecting it against decrease to equitable principles.

Long-standing equity principles, according to the Court, dictated that "only under the most imperative circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims." Golden's right was lost through the racist and prejudicial tactics of Judge Rita F. Lin.

In *Ross v. Bernhard*, the Court held that the right to a jury trial depends on the nature of the issue to be tried, rather than the procedural framework in which it is raised. Because the Federal Rules of Civil Procedure merged law and equity in the federal courts, there was no longer any procedural obstacle to transferring jurisdiction to the law side once the equitable issue of standing was decided. Thus, the Court continued, if the claim that is asserted is legal in nature, it should be heard on the law side before a jury.

*Sullivan v. Redfield*, 23 F. Cas. 357 (C.C.D.N.Y. 1825) (No. 13,597), in 1825 exemplifies the early view on these issues. There, Justice Thompson stated that in cases properly filed in equity, the validity of an invention patent was something on which the parties had a right to a jury, and thus the court was obligated to send the parties to the court's law side for trial:

> "Whether the complainant's patent is good and valid so as ultimately to secure to him the right he claims, is not a question for decision upon the equity side of this court. That is a question which belongs to a court of law, in which the parties have a right of trial by a jury."

**Issues of Fact are to be Determined by the Jury**

The primary purpose of the Seventh Amendment is to preserve the common law distinction between the province of the court and that of the jury, whereby, in the absence of express or implied consent to the contrary, issues of law are resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court. *Baltimore & Carolina Line v. Redman,* 295 U.S. 654, 657 (1935); *Walker v. New Mexico & So. Pac. R.R.,* 165 U.S. 593, 596 (1897); *Gasoline Products Co. v. Champlin Ref. Co.,* 283 U.S. 494, 497–99 (1931); *Dimick v. Schiedt,* 293 U.S. 474, 476, 485–86 (1935).

Patent infringement is an issue-of-fact tried by a jury under the Seventh Amendment. The issues of facts, acknowledged by the Defendant in their second motion to dismiss, are to be determined by a jury. The following issues are taken from Google's Motion to Dismiss Plaintiff's Amended Complaint, NDC Case 3:22-cv-05246-RFL Document 44 Filed 09/07/23:

- "In pleading direct patent infringement, a plaintiff cannot satisfy "the pleading standards set forth in *Twombly* and *Iqbal* 'by reciting the claim elements and merely concluding that the accused protect [sic] has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'"

- "Where a plaintiff "fails to allege facts plausibly supporting an inference that [the defendant] purposely induced another party to infringe any patent," courts dismiss claims of induced infringement."

- "Willful blindness is a high standard, requiring that the alleged inducer (1) subjectively believe that there is a high probability that a fact exists and (2) take deliberate actions to avoid learning of that fact."

- "[P]utting Global-Tech together with *Iqbal*, the question before the Court" at the pleading stage is whether a plaintiff has pleaded "sufficient facts . . . for the Court to infer" willful blindness."

- "The amended complaint contains no allegations either that Google "subjectively believe[d] that there is a high probability that a fact exists" or that Google took any "deliberate actions to avoid learning of that fact.""

- "Mr. Golden merely asserts that Google contributes its Google Tensor Chipset, but does not allege to whom Google contributes the Tensor Chipset, nor any factual allegations supporting his threadbare claims that Google is liable for contributory infringement"
- "Here, just as in Bill of Lading, the complaint "supplies the very facts which defeat its claims of contributory infringement.""
- "To state a claim for willful infringement, the plaintiff must plead that the defendant acted with knowledge of the patent and of his alleged infringement, or equivalent facts." … "Although the jury decides willfulness, willfulness only goes to the jury if it was properly framed by the pleadings."

A patent infringement claim is an issue-of-fact tried by a jury under the Seventh Amendment. The issues of facts, acknowledged by the Defendant in their second motion to dismiss, are to be decided by a jury. Judge Rita F. Lin joined the conspiracy as a co-conspirator and dismissed Golden's case because he's a Black and/or African American who brought a case of stealing against the White-owned company Google, in her Court that is governed and guided by systemic and structural racism.

Judge Rita F. Lin's racism is so deep she is willing, with knowledge, to violate Golden's Constitutional rights under the Fifth Amendment Clause of the U.S. Constitution ("deprivation of property without due process of law, and without paying just compensation"), and the Seventh Amendment of the U.S. Constitution ("guaranteed right to a trial by jury in claims of patent infringement, that are issues-of-fact").

A jury needs to decide if the phases "smartphone must be modified for detection functionality", "modified by a third-party in order to function", and "software modification is needed for infringement to occur". Judge Rita F. Lin improperly added these abstract ideas.

The three phases are theoretical or hypothetical, and are not found in any of Golden's patent claim limitations asserted in this case.

In *Research Corporation Technologies Inc. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010) (RCT). The patent at issue was U.S. Patent No. 5,111,310. Hypothetical claims 1-3 are directed to an abstract idea [ineligible] and have additional elements that amount to significantly more than the abstract idea because they show an improvement in

the functioning of the computer itself and also show an improvement to another technology/technical field, either of which can show eligibility.

In *SiRF Technology Inc. v. International Trade Commission*, 601 F.3d 1319 (Fed. Cir. 2010) (SiRF Tech). The patent at issue was U.S. Patent No. 6,417,801. Hypothetical claims 1 and 2 are directed to an abstract idea [ineligible] and have additional elements that amount to significantly more than the abstract idea because they show an improvement to another technology or technical field.

In *Google Inc. v. Simpleair, Inc.*, Covered Business Method Case No. CBM 2014-00170 (Jan. 22, 2015), … The patent at issue was U.S. Patent No. 7,035,914 entitled "*System and Method for Transmission of Data.*" Hypothetical claim 2 also recites an abstract idea [ineligible] but does contain additional elements that amount to significantly more because there are meaningful limitations beyond generally linking the use of the abstract idea to a particular technological environment.

For the same reasons set forth above, by taking all the abstract ideas and adding them to the claim elements individually, and in combination; Golden's patent claims as a whole amounts to significantly more than the abstract ideas of "smartphone must be modified for detection functionality", "modified by a third-party in order to function", and "software modification is needed for infringement to occur".

Upon reviewing the chart below, it's obvious Judge Rita F. Lin does not know what she's talking about. Nowhere in the claim limitations are the phases "smartphone must be modified for detection functionality", "modified by a third-party in order to function", and "software modification is needed for infringement to occur".

| Google Pixel 5 Smartphone | Patent #: 10,163,287; Independent Claim 5 | Patent #: 9,589,439; Indep. Claim 23 | Patent #: 9,096,189; Independent Claim 1 |
|---|---|---|---|
| | A monitoring device, comprising: | A cell phone comprising: | A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal … |

| | | | |
|---|---|---|---|
| CPU: Octa-core (1 × 2.4 GHz Kryo 475 Prime & 1 × 2.2 GHz Kryo 475 Gold & 6 × 1.8 GHz Kryo 475 Silver) System-on-a-chip: Qualcomm Snapdragon 765G | at least one central processing unit (CPU); | a central processing unit (CPU) for executing and carrying out the instructions of a computer program; | at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program, ... |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) is a digital application available to warfighters throughout the DoD. ATAK—end-user device smartphone or tablet. With DTRA's contribution, ATAK now includes ... (CBRN) plug-ins. | one or more detectors in communication with the at least one CPU for detecting at least one of chemical, biological, radiological, or explosive agents | at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor capable of being disposed within, on, upon or adjacent the cell phone; | wherein the communication device receives a signal via any of one or more products listed in any of the plurality of product grouping categories; |
| *Android Team Awareness Kit*, ATAK (built on the Android operating system) provides a single interface for viewing and controlling different CBRN-sensing tech. | at least one of a transmitter or a transceiver in communication with ... CPU... | whereupon a signal sent to the receiver ... causes a signal that includes at least one of location data ... | whereupon the communication device, is interconnected to a product equipped to receive signals from or send signals to... |

After reviewing the chart, it's easy to see Golden's only responsibility is to first identify the Google Pixel smartphone as "[a] monitoring device", "[a] cell phone", or "[a] communication device". Next, Golden needs to identify where in the Google smartphone the central processing unit(s) (CPUs) can be found. Following, Golden needs to identify where in the Google smartphone the CBRNE are found, or identify the CBRNE detectors/sensors that are disposed within, on, upon or adjacent the cell phone. Lastly, Golden need only to identify where in the Google smartphone the transmitters, receivers, and transceivers are found.

The DTRA ATAK software is built on the Google Android Open-Source Operating system software; the Google Android Open-Source Operating System [software] that is built on the open-source code of Linux; the Linux Operating System is a type of operating system that is built upon the Linux Kernel; and Linux distribution is an operating system that is made up of a collection of software based on Linux kernel. Therefore, again, what software, what third-party, what device? Because, through it all the operating systems and the third-party devices are interconnected to Golden's patented central processing unit for functionality.

The only time Golden is responsibility for locating a third-party, or software in the Google smartphone; and locating in the Google smartphone the unforeseen abstract step of modifying, is when Judge Rita F. Lin orders Golden to do so.

That's why a trial by jury is not only a right guaranteed Golden by the Seventh Amendment of the United States Constitution, in this case a jury trial is pertinent to the pursuit for justice and fairness.

## CONCLUSION

The Government [DHS] is responsible issuing in 2007 the first solicitation for the development and assembly of Golden's communicating, monitoring, detecting, and controlling (CMDC) device; or what the market identifies as the first "smartphone". ***Exhibit A***. *DHS S&T BAA07-10 Cell-All Ubiquitous Biological and Chemical Sensing*

Under the "Performers" page of ***Exhibit A*** is the statement "State-of-the-art miniaturized detection system integrated into [Google] Android cell phones. Under the "Phase II Protypes" page of ***Exhibit A*** are the statements "[d]ecouple the chemical sensor from the phone", "[m]ultiple sensor units per phone are possible", [s]ensor data transmission via 3g and/or Wi-Fi", and "Bluetooth/Proprietary interfaces". Golden demonstrated five allegedly direct infringement scenarios in the amended complaint that the Google Pixel smartphone is capable of sensing hazardous materials, which directly aligns with requirements of the *Cell-All* initiative.

Google is responsible for enabling the cell phones to sense both; with sensors embedded internal the cell phone and sensors or detection systems external or remote the cell phone. "The major milestone in the development of the Android system occurred on November 5th, 2007. On this day, Google unveiled the Open Handset Alliance (OHA), a consortium of technology manufacturers that would work together to create open mobile device standards. At the outset, 34 companies were involved in the consortium." https://ipwatchdog.com/2014/11/26/a-brief-history-of-googles-android-operating-system/id=52285/

"Android, the flagship software of the alliance, is based on an open-source license" … "As part of its efforts to promote a unified [Google] Android platform, OHA members are contractually forbidden from producing devices that are based on competing forks of Android." https://www.cnet.com/tech/mobile/alibaba-google-just-plain-wrong-about-our-os/

***Exhibit B*** is a published document by Qualcomm that is developed in partnership with the U.S. Department of Homeland Security Science & Technology Directorate. Under the "Who are the necessary stakeholders?" page of ***Exhibit B***, Google [android] is listed as the first of many in the upper left side of the page. Under the "What's left to do?" page of ***Exhibit B***, is the statement "Enhance security for commercial use". Golden's patented CMDC device (i.e., smartphone) include the enhanced security for commercial use with its 1-biometric fingerprint and/or facial authentication; 2- a lock disabling mechanism that locks the phones after multiple failed attempts to unlock the phone; 3- GPS tracking and location; and, 4- near-field communication (NFC) in lieu of the radio-frequency identification (RFID) DHS demonstrated can be used to detonate a bomb. Google has copied and/or duplicated Golden's enhanced security measures for his patented CMDC device (i.e., smartphone).

***Exhibit C*** is a published unclassified document by Qualcomm Government Technologies for the *Cell-All* initiative. Under the "More details—Cost" page of ***Exhibit C*** is the statement "Must use a standard operating system", and under the "More details—Manufacturing Consideration" page of ***Exhibit C*** is the statement "Software – must be release controlled & compatible with the [an] existing operating system".

"Qualcomm's role has been to develop a smartphone app and the associated network software for processing data. Smartphone users can download the app from Google Play and, eventually, from Apple's iTunes store, so Cell-All will be operational on all phones using either Google's Android or Apple's iPhone operating systems." *Retrieved from*: Crowdsourcing urban surveillance: The development of homeland security markets for environmental sensor networks. https://www.sciencedirect.com/science/article/abs/pii/S0016718513000341

After Google was found potentially liable for directly infringing Golden's patented CMDC device (i.e., smartphone), in *Larry Golden v. Google LLC*; Case No. 22-1267, Google discontinued its partnership with Qualcomm for Qualcomm's chipset/CPU and replaced it with the Google Tensor chipset/CPU for the Google Pixel 6 smartphone series and beyond.

The Google Tensor chipset/CPU for the Google Pixel 6 smartphone series and beyond performs "performs substantially the same function in substantially the same way to obtain the same result" [Doctrine of Equivalents], as Qualcomm's chipset/CPU and Golden's patented CPU invention for his patented CMDC device (i.e., smartphone).

Google failed to defend, and Judge Lin completely ignored Golden's claim that Google's Tensor, Tensor 2, and Tensor 3 CPU/Chipset allegedly infringes independent claims 4, 5, & 6 of Golden's '287 patent, and independent claim 11, and dependent claims 12-20 of Golden's '619 patent asserted in the case. Failure to defend is an admission of guilt.

Google has always been at the helm for controlling the integration of hardware and software with its Google Android Open-Source Operating System platform since the very beginning of the creation of the first smartphone in 2007. Which means Google has always been at the helm for controlling the integration of hardware [Draper Laboratories Inc.'s CBRNE plug-in sensors] and the software [DoD DTRA ATAK] that is built on the Google Android Open-Source Operating System platform since the very beginning of the creation of the first smartphone in 2007. Google and Judge Lin will have the Federal Circuit to believe some third-party [DTRA] just happened to come alone and decided to add some CBRNE sensing to the Google smartphone. This, by far, is a lie.

The Federal Circuit has already reviewed Google's alleged patent infringement and has determined Google more likely than not is literally, or under the doctrine of equivalents infringing Golden's patent. Google is seeking to have the Federal Circuit render a decision on emotion rather than the merits. Google simply wants the Circuit to deprive another Black and/or African American of his patented inventive property, and/or allow another multi-billion-dollar company to steal from a small business; a minority-owned business; and veteran-owned business. Summary Affirmance in Golden's favor is ripe in this case.

Sincerely,

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605 (M) 8649927104
Email: atpg-tech@charter.net

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1ˢᵗ day of August, 2024, a true and correct copy of the foregoing "PLAINTIFF-APPELLANT'S REPLY IN SUPPOT OF SUMMARY AFFIRMANCE", was served upon the following Defendant by priority "express" mail:

Matthew S. Warren

WARREN KASH WARREN LLP

2261 Market Street, No. 606

San Francisco, California, 94114

Phone: (415) 895-2940

Fax: (415) 895-2964

Email: 22-5246@cases.warrenlex.com

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

Exhibit A

# HSARPA

Homeland Security Advanced Research Projects Agency


Homeland Security
Science and Technology



#10019128-

## CELL-ALL
## Ubiquitous Chemical Sensing

1



## CELL ALL

**SUMMARY:** Widely distributed system of small chemical agent detectors that provide rapid detection, classification, and notification to decision makers

**CUSTOMERS:** Public, Responders, Chemical Facilities Sector & DNDO

**PROGRAM START:** 2008

**WHAT'S NEXT:** Second generation prototype development, third party sensor characterizations, network demonstrations.

# Cell-All Goals

## Homeland Security Goals (QHSR)

**Mission 1: Preventing Terrorism and Enhancing Security**

- Goal 1.1: Prevent Terrorist Attacks
- Goal 1.2: Prevent the Unauthorized Acquisition or Use of Chemical, Biological, Radiological, and Nuclear Materials and Capabilities

**Mission 5: Ensuring Resilience to Disasters**

- Goal 5.1: Mitigate Hazards
- Goal 5.2: Enhance Preparedness
- Goal 5.3: Ensure Effective Emergency Response
- Goal 5.4: Rapid Recovery

## S&T Goals

- Rapidly develop and deliver knowledge, analysis, and innovative solutions that advance the mission of the Department

## HSARPA Goals

- Proof of concept technology development and demonstration
- Potential for significant gains in technical capability



Homeland
Security

# Motivations to Improve Detection

Large, expensive and stationary systems represent state of the art for chemical agent detection

A variety of less expensive handheld systems are available as separate systems

Geographic coverage is limited to specific areas for each deployment

Sampling may not reflect the environment where people are actually located



# Approach

## Create a large and dynamic sensing system

- Miniaturized and effective sensing capability
- Integrate low-cost sensing into common devices
    - Sensing becomes part of the environment
- Harvest the benefits of network effects and crowd sourcing
- Privacy Protection for individuals
- Integrate with 261 million cell phones now used in the U.S.
- Leverage billions of dollars spent each year in sensor, carrier network and cell phone development

## Gain earlier indications and warning for hazardous chemical events



Homeland
Security

# Technical Approach

## Embedded Miniature Sensors

- Sample collection
- Reusable devices with lifetimes that equal that of the host device
- Address sensor sensitivity & selectivity in the environment
- Prototype concepts for integrated sensing
- Methods for read/report of sensor information

## Sensing Network to Significantly Expand Coverage

- Investigate sensor performance in a large scale networks
- Concepts of Operation for ubiquitous sensing
- Modeling large scale system characteristics and response



Homeland Security

# CellAll Team



HSARPA
Concept, architectural guidance & funding

First Responder Advisors

NASA
Sensor Development and
Systems Integration

Synkera
Sensor and Sensing
Module Development

Qualcomm, Inc.
Systems Design/Integration

Data processing,
transmission and
consolidation

SeaCoast Sciences
Natural Selections

NC4
Data consolidation
and visualization

Homeland Security

# Performers



**NASA Ames Research Center**
Developed a world smallest and ultra low power nanosensor array module with sensors, a sampling device and a data acquisition board all-in-one (a stamp size) integrated with an iPhone and an app for data processing and transmission



**Qualcomm**
State-of-the-art miniaturized detection system integrated into Android cell phones



**Synkera**
Sensor & Module Developer



# Phase 1 – Proof of Concepts

- Establish miniature sensor efficacy
- Discover limitations for cell phone integration
- Develop first generation prototypes
- Proof of concept demonstrations
  - NASA – Leveraging nanosensor work for space missions to further miniaturizing the space qualified integrated sensing system for detection of toxics and CWAs using smartphones.
  - Synkera – Leveraging SBIR funded development of miniature sensors.
  - Qualcomm – Using an existing hardware platform to integrate an existing sensor and demonstrate its ability to sense a defined set of agents

 Homeland Security

# Phase I Prototypes

### Qualcomm FFA



### NASA ARC nanosensor module for iPhone integration

 

**iPhone Specifications**



Homeland
Security

# Phase II Prototypes

- Achieve a greater number of total prototype devices at a reasonable unit cost
- Sensor data transmission via 3g and/or Wi-Fi
- Multiple sensors network for chemical profiling
- Decouple the chemical sensor from the phone.
- Multiple sensor units per phone are possible
- Bluetooth/Proprietary Interfaces
- Standardize the sensor platform
- Increase opportunities for participation



# Summer 2011 Demonstrations

- LAFD, Frank Hotchkins Memorial Training Center
  - Carbon Monoxide
  - Personal Protection Scenario
  - Audio Alarm
  - In Case of Emergency (ICE) Alerts

- FEMA, Center for Domestic Preparedness
  - Toxic Chemical Agents
  - Hazardous Materials Response Team Scenario
  - Network response
  - Geographic-based visualization


Homeland Security

Exhibit B

QUALCOMM®

# DHS asked, "what if…"

## …we wanted to provide high impact ubiquitous technology for CBRNE sensing?



 Developed in partnership with the U.S. Department of Homeland Security Science & Technology Directorate

# DHS asked, "what if…"

Answer: Use commercial cellular phone
ecosystem and commercial networks



 DEVELOPED IN PARTNERSHIP WITH THE U.S. Department of Homeland Security Science & Technology Directorate

# Who are the necessary stakeholders?

# How does it work?



QUALCOMM  DEVELOPED IN PARTNERSHIP WITH THE U.S. Department of Homeland Security Science & Technology Directorate

# What's left to do?



## FIRST RESPONSE COMMUNITY

- Seamless integration to their workflow
- Training in the use of Cell-All

## BUSINESS

- How to make it attractive for all stakeholders



## SYSTEM

- First responder and user trials
- Performance and scalability
- Enhance security for commercial use
- Refine algorithm



## SENSORS

- Manufacturing Volumes
- Reproducibility
- Power
- Integration



# Exhibit C



QUALCOMM Government Technologies

# Network control and architecture




# Sensors Services Framework – Approach

Applications ⟶

QC Sensors Services Framework ⟶

3rd Party H/W ⟶



# Cell Phone Environment

- Handsets are very price sensitive
- Components must be small and thin
- Battery life is a key benchmarks and more is better
- Short development time
- Short life cycle
- No time for redesigns
- Must be adaptable to standard manufacturing processes
- Temperatures/humidity/pressure fluctuate (Polar to Equator externally)
- RF interference issues
- Applications must be thin
- Algorithms must be efficient
- False positives will make this fail

QUALCOMM

# More details

- Cost
  - Features like this usually require component cost of <$1.00 (including support sensors for humidity, pressure and temperature if necessary)
  - Studies indicate
    - Consumers might be willing to pay the additional cost of $1.00
    - A personal sensing application for CO may improve up take
    - False positives would kill feature quickly
  - The cost associated with the manufacturing process is equally important
    - OEMs cannot be expected to calibrate (self calibration)
    - Must use a standard operating system

QUALCOMM

# More details

- Digital Interfaces
  - UART (up to 4Mbps)
    - Two wire interface (Transmit/Receive)
    - Supporting asynchronous data
  - I2C (typically used for sensors)
    - Used for command and control of devices such as the camera
    - Two wire Master/Slave type bus
    - Clock line and data line
    - Supports 1 Master and multiple Slaves
    - Generally supports 100KHz and 400KHz operation on the bus
  - Analog
    - Some handsets support this
    - Typically used for temperature
    - May offer integration advantages

# More details

- Manufacturing Consideration
  - Manufacturing temperatures as high as 260° C possible
    - A flex circuit or socket approach may be necessary
  - Size
    - 3-15 sensors on a <6x6x2mm optimally 2x2x1mm
    - Including components necessary for support (fans, vents, filters, dwell)
  - Packaging - must withstand the vibration, drops and abuse of a typical handset
  - Software – must be release controlled & compatible with the an existing operating system



**UNITED STATES POSTAL SERVICE**®

**PRIORITY MAIL EXPRESS**®



EI 975 707 035 US

**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT)   PHONE 864 288-5605

LARRY GOLDEN
740 WOODRUFF RD.
#1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS** (Customer Use Only)

**SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)   PHONE 202 275-8000

U.S. COURT OF APPEALS FOR THE
FEDERAL CIRCUIT
CASE No: 2024-2024
717 MADISON PLACE, NW
WASHINGTON, DC

ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 4 3 9 - _ _ _ _

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

◄ **PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT** (if applicable)
Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 29007 | 8-2-24 | $ 30.45 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 8-1-24 | ☐ 6:00 PM   6 PM | $ | $ |

| Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 2:08 ☐ AM ☐ PM | | $ | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ | |

| Weight | ☑ Flat Rate | Acceptance Employee Initials | $ 30.45 |
|---|---|---|---|
| lbs.   ozs. | | AC | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, NOVEMBER 2023   PSN 7690-02-000-9996