No: 2024-2024

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

LARRY GOLDEN
*Appellant*

v.

Google, LLC
*Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA—

SAN FRANCISCO IN 4:22-cv-05246-RFL

JUDGE RITA F. LIN

**PLAINTIFF-APPELLANT'S REQUEST TO COMPEL THE APPELLEE TO PRODUCE EVIDENCE OR RULE IN FAVOR OF APPELLANT FOR APPELLEE'S FAILURE TO COMPLY WITH A COURT ORDER**

LARRY GOLDEN
740 Woodruff Rd., #1102
Greenville, S.C. 29607
(864-288-5605)
Atpg-tech@charter.net

Appearing ProSe

December 11, 2024

Under Rule 403; the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Exclusion for risk of unfair prejudice, confusion of issues, misleading the jury, or waste of time, all find ample support in the authorities. "Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

Whenever an attorney is accused of having violated § 401(3) based upon a failure to comply with a court order, "willfulness may be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty." *In re Holloway*, 995 F.2d at 1082 (citations omitted). Courts have held that there must be evidence that the attorney "deliberately or recklessly disregarded his obligation to the court, or intended some disrespect to the court." *DeVaughn v. District of Columbia*, 628 F.2d 205, 207 (D.C. Cir. 1980). In order to hold a party accountable for violating an order, the order is required to have been clear and unambiguous. *See Cooper v. Texaco, Inc.*, 961 F.2d 71 (5th Cir. 1992); *United States v. O'Quinn*, 913 F.2d 221 (5th Cir. 1990) (per curiam).

Appellee was ordered on 12/05/2024 to produce "'Outstanding paper copies of all briefs and appendices must be submitted within five business days from the date of issuance of this notice.' See Fed. Cir. R. 25(c)(3)(A). [1052195] [GWK] [Entered: 12/05/2024 04:03 PM]."

On 12/09/2024 Appellee filed "6 paper copies of Doc. No. [22] received from Appellee Google LLC. [1052861] [VDW] [Entered: 12/09/2024 04:18 PM]." Appellee failed to file 6 copies of Doc. No [23] "Appellee's Supplemental Appendix".

Here, Appellant demands the Appellee produce the 6 paper copies of the Appellee's 996-page Supplemental Appendix [23] because it serves as evidence for the Appellant to show the "unfair prejudice"; that within its context means an undue tendency to suggest decision on an improper basis.

The Appellee's 996-page Supplemental Appendix [23] is evidencing the Appellee is confusing the issues; misleading the Court; causing undue delay; and instead of presenting the issues-of-facts to a jury, is caught wasting the Court's time on non-infringement theories that has no place in patent law, and of which poses a threat to the USPTO patent grant system.

The Appellee's defense theory and strategy is to repeatedly lie to say "Golden *admits* Google make devices that requires modification, or someone else to modify to infringe".

"BRIEF OF APPELLEE" in the United States Court of Appeals for the Federal Circuit; *LARRY GOLDEN, Plaintiff-Appellant, v. GOOGLE LLC, Defendant-Appellee.* Case: 24-2024 Document: 22 Filed: 11/18/2024. On Appeal from the United States District Court for the District of the Northern District of California, in Case No. 3:22-cv-05246-RFL (Hon. Rita F. Lin, Judge).

*Page 21*: "Google argued that Mr. Golden's "complaint accuses Google of patent infringement by making and selling Pixel devices, but *admits* on its face that the accused Pixel devices cannot infringe without adding an additional application, called Android Team Awareness Kit or 'ATAK,' that the plaintiff concedes Google does not make or sell." SAppx221; see also SAppx226-227. As a result, Google argued, the complaint "does not actually allege that Google infringes; it claims only that Google makes devices that someone else could modify, by installing additional software, into an allegedly infringing device." SAppx221. Because "a device that requires modification to infringe is by definition a noninfringing device," the "complaint thus *admits* that Google makes and sells noninfringing devices, and therefore fails to state a claim on which this Court can grant relief." SAppx221.

*Page 26-27*: "Specifically, Google argued that: "Mr. Golden's first theory of infringement, set forth on pages 2-9 of Exhibit G, requires the use of 'ATAK-CIVILIAN,'" but "Mr. Golden *admits* in his amended complaint that ATAK-CIVILIAN, a 'digital application available to warfighters throughout the DoD,' is a 'third-party' application, which a user must choose to install." SAppx570; see SAppx569-572.

"Mr. Golden's second theory of infringement, set forth on pages 10- 17 of Exhibit G, requires 'Google's NFC Sensor,'" but "Mr. Golden *admits* that 'Google NFC smartphones communicate with NFC tags,' confirming that the 'NFC tags' are external to Google products." SAppx570; see SAppx569-572.

"Mr. Golden's third theory of infringement, set forth on pages 18-25 of Exhibit G, requires 'Google's camera lens with microfluidic lens'" but "the complaint *admits* that Google's Pixel devices do not include a 'microfluidic lens,' cannot use a 'microscope to focus on a chemical sensor,' and cannot 'capture [] the image from the array of nanopores us[ing] fluid.'" SAppx570-571; see SAppx569-572.

3

"Mr. Golden's fourth theory of infringement, set forth on pages 26-33 of Exhibit G, requires a list of 'Smartphone Biosensors' that the complaint confirms do not appear in Google's accused devices." SAppx571; see SAppx569-572.

"Mr. Golden's fifth theory of infringement, set forth on pages 34-41 of Exhibit G, requires 'Google Beacon'" but "the amended complaint itself *admits* that Google Beacon is separate from the accused Pixel devices." SAppx572; see SAppx569-572.

*Page 28*: "Appellant also attempted to defend his direct infringement allegations, SAppx600-603, but in the process *admitted* their flaws:

Defending his first theory of infringement by ATAK-CIVILIAN, Appellant *admitted* that "the ATAK-CIV software application" is what "enables the CBRNE sensors to monitor, detect, and relay data," and reconfirmed that "the ATAK-CIV software application" is separate from Google's accused devices. SAppx600 (emphasis in original); see, e.g., SAppx605 ("ATAK is built on the Android operating system"); SAppx605-606 (claiming "Government Agencies" developed "software apps for CBRNE detection" including "ATAK-CIV (CBRN)").

Defending his second theory of infringement by NFC tags, Appellant admitted that he alleged infringement only upon transmission of "payloads of data between the NFC tags and the Android-powered Google Pixel 6a, 7, 7a, 7 Pro, and Fold smartphones," reconfirming that the "NFC tags" are both necessary for infringement and separate from the accused devices. SAppx600-601; see, e.g., SAppx592 ("MIT chemists devised a new way to wirelessly detect hazardous gases with a sensor that can be read by a smartphone ... The new sensors are made from modified near-field communication (NFC) tags," and "can be read by any smartphone that has NFC capability").

*Page 52*: "Appellant's first complaint admitted that infringement could occur only with the addition of the ATAK application not made by Google, see supra §§ D.1, D.2, and the Court found that his "own claim chart makes it clear that Defendant's products purportedly infringe because of the characteristics of the ATAK application." SAppx279;

The Appellee's 996-page Supplemental Appendix [23] is proof the Appellant never admitted the "Google device requires modification or someone else to modify it to infringe." The Appellee's defense theory and strategy is designed to confuse and mislead the Court.

4

Example scenario: Golden invents a flashlight [Google's smartphone] that has an infrared capability for detecting humans [Google's camera] when turned on. Golden releases the power source specifications for operation and functionality [Google's android open-source operating system]. Golden claims his flashlight power source is at least one of solar, rechargeable battery, or Double-D (DD) batteries.

Now, here comes the all so brilliant Judge who is set out to prove to the World she knows more about the operation and functionality of Golden's flashlight, that is capable of infrared human detection, than Golden who is the inventor of the flashlight and even the USPTO who granted patents to Golden on the flashlight.

So the super intelligent Judge declares by order of operation that in order for the flashlight to function as a device capable of detecting humans, it must be modified by a third party by: exposing the flashlight to the sun in order for it to function as a human detector; modifying the flashlight with a battery charger for it to function as a human detector; or, a third-party modifying the flashlight with Double-D (DD) batteries for it to function as a human detector.

Again, the Appellee's 996-page Supplemental Appendix [23] is evidencing the Appellee is confusing the issues; misleading the Court; causing undue delay; and instead of presenting the issues-of-facts to a jury, is caught wasting the Court's time on non-infringement theories that has no place in patent law, and of which poses a threat to the USPTO patent grant system.

**Appellee's 996-page Supplemental Appendix [23] is Evidence the Appellee Grossly Violated Appellant's Seven Amendment Constitutional Right to a Jury Trial**

The Federal Circuit in *Golden v. Google LLC* Case No. 22-1267 disclosed in "Discussion" that the Circuit reviewed the case "under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), [a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face]." *Twombly*, 550 U.S. at 570; and, "plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678

The Federal Circuit in *Golden v. Google LLC* Case No. 22-1267 took notice that "in the patent context, th[e] court has explained that a plaintiff need not "plead facts establishing that each element of an asserted claim is met," *In re Bill of Lading Transmission and Processing Sys.*

*Pat. Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007)), but must plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Id.* at 1341 (alteration in original) (quoting *Twombly*, 550 U.S. at 556)".

The Federal Circuit in *Larry Golden v. Google LLC*; Case No. 22-1267 examined and determined Golden has described how the Google "smartphone", that include the ATAK software, CBRN plugin sensors, and Google's Nest x Yale Locks literally infringes at least claim 5 of Golden's '287 Patent; claim 23 of Golden's '439 Patent; and claim 1 of Golden's '189 Patent. See the chart below:

| Literal Infringement (Precedence) | Literal Infringement (Fed. Cir. *Golden v. Google*) |
|---|---|
| Literal infringement means that each and every element recited in a claim has identical correspondence in the allegedly infringing device or process. To literally infringe a patent, the accused system, method, etc. must include each limitation of a claim. E.g., *Southwall* (Fed. Cir. 05/10/95) To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly. *Becton Dickinson* (Fed. Cir. 12/13/90). "Infringement, both literal and under the doctrine of equivalents, is an issue of fact."); *Cobalt Boats* (Fed. Cir. 05/31/19) "patent infringement is an issue of fact, tried by a jury" [U.S. CONST. amend. VII] | "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the [] Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 ... It [claim chart] attempts [] to map claim limitations to infringing product features, and it does so in a relatively straightforward manner ...[W]e conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart...." |

The Federal Circuit in *Golden v. Google LLC* Case No. 22-1267 goes on to say: "In the Google case, the district court *again* concluded that Mr. Golden's complaint was frivolous. Here, however, Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google [Pixel 5] Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189" ... "to the extent that the chart includes the "exact same language" as previously rejected charts, it is simply the language of the independent claims being mapped to" ... "[i]t attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straightforward manner. We conclude

that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart. Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims in this chart."

Although the Federal Circuit did not specifically say "'without a doubt', Google's smartphone products that include the ATAK software, CBRN plugin sensors, and *Google's Nest x Yale Locks* are literally and/or under the doctrine of equivalents, infringing Golden's patents asserted in the case", the Federal Circuit imply to say under the "clear and convincing evidence" standard, Google's smartphone products that include the ATAK software, CBRN plugin sensors, and *Google's Nest x Yale Locks* are allegedly infringing Golden's patents asserted in the case.

Therefore, Golden has satisfied his burden of proof under the "preponderance of evidence" standard with "enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Id*. at 1341 (alteration in original) (quoting *Twombly*, 550 U.S. at 556)". Golden need not prove that each element is satisfied, but Golden must allege facts that, taken as true, plausibly suggest that each element is satisfied.

The Seventh Amendment to the Constitution preserves the basic right of trial by jury "in suits at Common Law where the value in controversy exceeds twenty dollars." The creation in 1982 of the United States Court of Appeals for the Federal Circuit ("Federal Circuit") has contributed to the recent increase in the use of juries.

This current case on appeal was filed in the NDC Court because the Circuit determined: "In the Google case, the [South Carolina] district court concluded that Mr. Golden's complaint was *frivolous*. ... We conclude that the district court's decision in the Google case is not correct with respect to at least the three claims mapped out in the claim chart ... the [Circuit] "express no opinion as to the adequacy of the complaint or claim chart except that it is not facially *frivolous*."

This case was ripe for a jury trial when the Appellate Court "Vacated and Remanded" the case back to the lower District Court. The Circuit reviewed the case "under the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), [a court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face]." *Twombly*, 550 U.S. at 570; and, "plaintiff must allege facts that give rise to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678

The Appellee's 996-page Supplemental Appendix (Dkt. 23) reveals the numerous times the Appellant begged for a jury trial; and how the lower court continually explained away the issues-of-facts that should have been tried by a jury, [U.S. CONS'T. amend. VII]. The Trial Court Judge completely ignored Appellant's alleged direct infringement claims that Google's Tensor, Tensor 2, and Tensor 3 CPU/Chipset directly infringes Golden's patent claims for a smartphone comprising a CPU, and the CPU patent claims capable of carrying out the operational and functional instructions of the smartphone; as the "brains" of the smartphone.

"Plaintiff is alleging the defendant Google, has in the past and continues to *contribute* the Google Tensor i.e., Central Processing Unit (CPU), Processor, System-on-a-Chip (SoC), Chipset; a material component of Plaintiff's patented Communicating, Monitoring, Detecting, and Controlling (CMDC) device, with knowledge that the Google Tensor Chipset is especially made for use in an infringement and is not a commodity suitable for a substantial non-infringing use." Dkt. 42: AMENDED COMPLAINT against Google LLC. Filed by Larry Golden on 08/23/2023 in the Northern District of California Court, in Case No. 3:22-cv-05246-RFL

3. "Google LLC is one of the largest technology companies in the world and conducts product sales, and online search operations in the District of South Carolina. ***Google LLC directly, jointly, and/or indirectly distributes, markets, offers to sell, sells, and/or imports the infringing Google Pixel Series of smartphones, Google Tensor CPU …***" Dkt. 42: AMENDED COMPLAINT against Google LLC. Filed by Larry Golden on 08/23/2023 in the Northern District of California Court, in Case No. 3:22-cv-05246-RFL

Appellant alleged in this case the Google Tensor CPU directly infringes patent claims 1 & 11, of his '619 patent, and patent claims 4 & 5 of his '287 patent.

The Google Tensor is a Google-designed system-on-chip (SoC) that first began in April 2016, after the introduction of the company's first Pixel smartphone. Beginning in 2017, Google began to include custom-designed co-processors in its Pixel smartphones.

| Google Tensor "CPU" | |
|---|---|
|  | Google went into Tensor and explicitly touted the inclusion of two high-performance ARM Cortex-X1 cores at 2.8 GHz. They are joined by two "mid" 2.25 GHz A76 CPU cores []. Four high-efficiency/small A55 cores round out the CPU. https://9to5google. com/2021/10/20/google-tensor-chip/ |
| | Google's Tensor include electronic hardware components such as CPU processors, micro-processors (single-core or multi-core) … may generally execute, process, or run instructions, code, code segments, code statements, software, firmware, and software programs |

The Appellee's 996-page Supplemental Appendix (Dkt. 23) reveals the numerous times the Appellant begged for a jury trial; and how the lower court continually explained away the issues-of-facts that should have been tried by a jury, [U.S. CONS'T. amend. VII]. Inducement, Contributory Infringement, and Willfulness knowledge requirements are all issues of fact.

- Subjective intent element of induced infringement is a fact issue. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020)

- Inducement and contributory infringement of a patent are issues of fact. *Bio-Rad Labs, Inc. v. ITC*, 998 F.3d 1320 (Fed. Cir. 2021)

- Entire decision of willfulness is a fact finder issue. *Exmark Manf. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332 (Fed. Cir. 2018), citing *Halo*.

"As to willfulness, an accused infringer's [Google] reliance on an opinion of counsel regarding noninfringement [] of the asserted patent[s] remains relevant to the infringer's state of mind post-*Halo*." *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337 (Fed. Cir. 2019)

Here, Google knew of Appellant's patent and intentionally copied patentee's product. State of mind of defendant is issue of fact for jury. *C R Bard Inc. v. Angiodynamics*, 979 F.3d 1372 (Fed. Cir. 2020)

Some examples of contributory infringement that should have been tried by a jury, include:

- The supply of Component A [Draper Laboratories' CBRNE Plug-in sensors] with instructions to connect it to a generically available Component B [alleged infringing Google smartphones], where A [Draper Laboratories' CBRNE Plug-in sensors] + B [alleged infringing Google smartphones] is a patented product.

- The supply of Component X [Google's Tensor CPU] which has no other reasonable use except for in the Process Y [alleged infringing Google smartphones], where Y [alleged infringing Google smartphones] is a patented process.

- The supply of a kit-of-parts [ATAK app., Beacon, NFC, GPS, Bluetooth] which the end user assembles to produce a patented product.

The Appellee's 996-page Supplemental Appendix (Dkt. 23) reveals the numerous times the Appellant begged for a jury trial; and how the lower court continually explained away the issues-of-facts that should have been tried by a jury, [U.S. CONS'T. amend. VII]. Direct infringement [inducement elements] can be proven by circumstantial evidence:

• Instructional materials [Google Android Open-Source Operating System] provided by defendant [Google] that directed medical providers [i.e., end users—third parties—developers] to perform each step of the claimed methods. Also, representations [camera use, smartwatch use, NFC, GPS, and Bluetooth use] made by defendant [Google] to customers [to include DoD, DTRA, and Draper] of device capabilities constituted evidence of those capabilities, they did not have to be shown by independent testing by plaintiff. *C.R. Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372 (Fed. Cir. 2020)

• "Where an alleged infringer [Google] designs a product [Google smartphone devices that includes the Google Android Open-Source Operating System] for use in an infringing way and instructs users to use the product in an infringing way [instruct on how to use the Google smartphones to sense for CBRNE], there is sufficient evidence for a jury to find direct infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358 (Fed. Cir. 2012)

Instruction required party [Google] to intend others to use products in a way that would infringe, but also instructed "that infringement need not have been actually caused by the party's [Google] actions. All that is required is that the party [Google] took steps to encourage or assist that infringement, regardless of whether that encouragement succeeded, or was even received." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315 (Fed. Cir. 2016) Does not require actual assembly of infringing product, just intention that component will be combined into one. *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

The Appellee's 996-page Supplemental Appendix (Dkt. 23) reveals the numerous times the Appellant begged for a jury trial; and how the lower court continually explained away the issues-of-facts that should have been tried by a jury, [U.S. CONS'T. amend. VII]. "En banc Federal Circuit broadens multiple-actor direct infringement (*Akamai v. Limelight*); '[t]he court held that, "where two or more actors [DTRA, Draper, and Google] form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor.'" The Circuit court ruled that this, too, is a "question of fact" reviewed under the deferential "substantial evidence" standard when tried to a jury.

Although the Federal Circuit did not specifically say, "without a doubt', the combined Google smartphone, that include the DTRA ATAK software, and Draper's CBRNE plugin sensors, literally infringes, infringes by equivalents, or infringes under the doctrine of joint infringement", the Federal Circuit imply to say under the "clear and convincing evidence" standard, the combined Google smartphone, that include the DTRA ATAK software, and Draper's CBRNE plugin sensors, directly infringes Golden's patents asserted in the case, by at least one of, if not all three, methods of direct infringement alleged in this case.

Appellant alleged Google directs or controls the DTRA and Draper's performance of the claimed method and has sufficiently demonstrated Google: (1) "conditions participation with its 'Google Android Open-Source Operating System' in an activity or receipt of a benefit upon others' performance of one or more steps of [the] patented method"; and (2) "establishes the manner [integration of software and hardware] or timing of that performance." *IOENGINE, LLC v. PayPal Holdings, Inc.*, Civil Action No. 18-452-WCB, Civil Action No. 18-826-WCB, 2019 WL 330515, at *1 (D. Del. Jan. 25, 2019)

The trial court judge seems to be confused about how to adjudicate the factual issues of what constitutes "joint infringement". The Judge seemingly do not know if the allegation is one directed at the joint enterprise of Google and DTRA, *or* Google and Draper Laboratory, when in fact the joint enterprise is between the three entities. The Judge states, "there are no factual allegations regarding the degree of control that Google had over Draper Laboratory *or* DTRA", when in fact Google had control over both Draper Laboratory *and* DTRA, for the purpose of forming the enterprise.

Appellant needed only to "alleged enough facts to show Google directs or controls the performance of the claimed method". The trial court judge admits Appellant has satisfied the requirement of "*control*" "there are no factual allegations regarding the degree of control that Google had over Draper Laboratory *or* DTRA", but raised the bar to a subjective analysis of "degree of control" that can only be satisfied in the Trial Court Judge own mind.

Appellant plead "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Id.* at 1341 (alteration in original) (quoting *Twombly*, 550 U.S. at 556)".

## CONCLUSION

Appellant only have two questions: 1- Why is it Appellant have to spend years defending fabricated defenses such as *frivolousness* in the South Carolina District Court, and now the fabricated defense of "*Golden **admits** Google make devices that require modification, or someone else to modify to infringe*" in the Northern District of California Court? 2- Why must Appellant continue to beg the Courts to honor his Seventh Amendment right to a trial by jury for patent infringement claims that are issues-of-fact?

Sincerely,

*/s/ Larry Golden*

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605 (M) 8649927104

Email: atpg-tech@charter.net

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 11th day of December, 2024, a true and correct copy of the foregoing "PLAINTIFF-APPELLANT'S REQUEST TO COMPEL THE APPELLEE TO PRODUCE EVIDENCE OR RULE IN FAVOR OF APPELLANT FOR APPELLEE'S FAILURE TO COMPLY WITH A COURT ORDER", was served upon the following Defendant by priority "express" mail:

Matthew S. Warren

WARREN KASH WARREN LLP

2261 Market Street, No. 606

San Francisco, California, 94114

Phone: (415) 895-2940

Fax: (415) 895-2964

Email: 22-5246@cases.warrenlex.com


*/s/ Larry Golden*

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605




# USPS PRIORITY MAIL EXPRESS LABEL

**Tracking #:** EI 975 707 225 US

**FROM:**
PHONE: 864 288-5605
LARRY GOLDEN
740 WOODRUFF RD.
# 1102
GREENVILLE, SC 29607

**DELIVERY OPTIONS (Customer Use Only)**
[X] SIGNATURE REQUIRED

**TO:**
PHONE: 202 275-8000
U.S. COURT OF APPEALS FOR THE FED. CIR.
CASE NO. 24-2024
717 MADISON PLACE, NW
WASHINGTON, DC
ZIP: 20439

**ORIGIN (POSTAL SERVICE USE ONLY)**
- PO ZIP Code: 29615
- Scheduled Delivery Date: 12-12-24
- Date Accepted: 12-11-24
- Time Accepted: 10:51 PM
- Sunday/Holiday Premium Fee: $32.00
- Weight: 4 lbs. 10 ozs.
- Acceptance Employee Initials: 8m

$100.00 insurance included.

LABEL 11-B, NOVEMBER 2023    PSN 7690-02-000-9996


