No: 2024-2024

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

LARRY GOLDEN
*Appellant*

v.

Google, LLC
*Appellee*

RECEIVED
JAN 10 2025
United States Court of Appeals
For the Federal Circuit

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR

THE NORTHERN DISTRICT OF CALIFORNIA—

SAN FRANCISCO IN 4:22-cv-05246-RFL

JUDGE RITA F. LIN

**PLAINTIFF-APPELLANT'S MEMORANDUM IN
LIEU OF ORAL ARGUMENT**

LARRY GOLDEN
740 Woodruff Rd., #1102
Greenville, S.C. 29607
(864-288-5605)
Atpg-tech@charter.net

Appearing ProSe

January 4, 2025

# THE 'KEY' CASES ON WHICH THE LOWER COURT RELIES ARE TO THE CONTRARY

United States District Court Northern District of California in *Larry Golden, Plaintiff, v. Google LLC, Defendant*. Case No. 22-cv-05246-RFL "ORDER GRANTING MOTION TO DISMISS AND DENYING LEAVE TO FILE A SURREPLY. Dkt. 68; filed 04/03/2024. Judge Lin is quoted as saying:

> *"ATAK application"*. Golden's first claim of direct infringement {see FAG, Ex. G("Ex. G") at 2-9) fails for the same reason as the original complaint: it requires the use of ATAK, a third-party application that the user must install on the accused product, for at least two elements of each asserted claim. (*See id.* at 6.) See *Nazomi Communications, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1346 (Fed. Cir. 2014) (finding that the defendants' products "do not infringe without modification—the modification of installing the required software").

In *Nazomi Communications, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1346 (Fed. Cir. 2014), the Circuit is quoted as saying: "The 'key' cases on which Nazomi relies are [] to the contrary."

> "*In Finjan, Inc. v. Secure Computing Corp.*, the infringing software capable of practicing the claim limitations was on the accused devices and could be unlocked by purchasing a product key. 626 F.3d 1197, 1205 (Fed.Cir.2010)."

In this current case, the infringing software is the Google android open-source operating system [Android OS]; that is capable of practicing the claim limitations, [is] on the accused Google smartphone devices and [can] be unlocked with a Google source code for sensing CBRN&Es by purchasing the ATAK product app. The Circuit is also quoted as saying:

> "Nazomi argues that the District Court improperly required a showing of intent by the defendants as a predicate to an infringement finding. The district court did no such thing. Rather, it was distinguishing this court's decision in *High Tech Medical*, which stated "if a device is designed to be altered or assembled before operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent." 49 F.3d at 1556.

Appellant claims Google smartphone device allegedly infringes Golden's patented communicating, monitoring, detecting, and controlling (CMDC) device. Appellant claims the Google smartphone device allegedly infringes because it "is designed to be altered or assembled before operation".

- Golden's CMDC device and Google's smartphone device are "designed to be altered or assembled before operation" to *communicate* by way of radio-frequency (RF), near-field communication (NFC), Bluetooth, Wi-Fi, internet, or cellular.
- Golden's CMDC device and Google's smartphone device are "designed to be altered or assembled before operation" to *monitor* for at least that of heart rate, pulse rate, or the internet-of-things (IoTs) that include but are not limited to smart mobiles, smart refrigerators, smartwatches, smart fire alarms, smart door locks, smart bicycles, medical sensors, fitness trackers, smart security system, etc.
- Golden's CMDC device and Google's smartphone device are "designed to be altered or assembled before operation" to *detect* for at least that of chemical, biological, radiological, nuclear, and explosives agents and compounds.
- Golden's CMDC device and Google's smartphone device are "designed to be altered or assembled before operation" to *control* at least that of a vehicle's stop-stall-slowdown, windows, ignition, temperature, door locks, location, tracking, etc.

In *Nazomi Communications, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1346 (Fed. Cir. 2014), the Circuit is quoted as saying: "[h]ere there is no suggestion that the accused devices were designed to be used with the JTEK software. Under these circumstances, we have no occasion to consider whether the design of a device that contemplates use in an infringing manner could establish direct infringement".

In this current case, Golden has repeatedly stated the Google smartphone devices were designed to be used with the ATAK software because the ATAK software is built on the Google android open-source operating system [OS]. Open-source software is code that is designed to be publicly accessible—anyone can see, modify, and distribute the code as they see fit. The software is released under an open-source license, so anyone can view or modify the source code.

The lower court [Judge Lin] is also quoted as saying:

> *"NFC tags"*. Likewise, Golden' second theory {see Ex. G at 10—17) requires combining "Google's NFC sensor," which are allegedly embedded in the accused products, with external NFC tags that have been converted to detect certain chemicals in order for there to be alleged infringement. Golden does not allege that the converted NFC tags are part of the accused smartphones. Thus, the FAC alleges only that the accused smartphones are capable of being modified to operate in an infringing manner, which is insufficient to support a finding of infringement. *Telemac Cellular Corp. v. Topp Telecom. Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) ("[T]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement.").

NFC stands for Near Field Communication. It is a technology that allows wireless data transmission over short distances using radio waves. The Google Nexus S smartphone was the

first Android device to include NFC all the way back in 2010. Any powered device that has its own NFC coil (like a Google smartphone) can act as an NFC reader. The Google reader device uses its battery to generate an electromagnetic field, which powers any tag brought near it. NFC tag readers, integrated into Google smartphones, play a critical role in reading and interpreting data from NFC tags. Here the Google smartphone is functioning as an NFC tag reader.

The lower court allowed Google to open up claim construction on a term "modify", "modified', or "modification", that does not appear in any of Golden's patent claims asserted in this case. Golden used the term *"configured to"* to describe the interconnection of components to function as a communicating, monitoring, detecting, and controlling (CMDC) device.

*In re Giannelli*, 739 F.3d 1375, 1379 (Fed. Cir. 2014); *see also Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) (noting that claim language *"configured to"* is construed more narrowly than "capable of" ... *"configured to"* language requires that the structure must be "designed or *configured to* accomplish the specified objective, not simply that [it] can be made to serve that purpose."*).

Claims 4, 5, & 6 of Golden's '287 patent asserted in this case, claims a "communication device", "monitoring device', and, "monitoring equipment', that comprises:

> "at least one of a transmitter or a transceiver in *communication* with the at least one CPU *configured to* send signals to *monitor* at least one of a door, a vehicle, or a building, send signals to lock or unlock doors, send signals to control components of a vehicle, send signals to *control* components of a building, or send signals to *detect* at least one of a chemical biological, radiological, or explosive agent such that the communication device is *capable of* communicating, monitoring, detecting, and controlling."

The Trial Court states: "[t]hat a [Google] device is capable of ... is not sufficient, by itself, to support a finding of infringement." Claims 1 & 11 of Golden's '619 patent illustrates how the Google device is not "by itself" when combined with Google's alleged infringing Tensor CPUs.

> 1. A communication device that is at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, comprising at least a central processing unit (CPU), capable of: ... processing instructions to scan a senor or tag using the short-range wireless technology of radio frequency near-field communication (NFC);
> 11. A central processing unit (CPU) of at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, capable of: processing instructions to scan a senor or tag using the short-range wireless technology of radio frequency near-field communication (NFC);

# GOOGLE ADMITS ITS OWN LIABILITY

Golden owns the patent rights for a smartphone [communication device] that comprises a central processing unit; a central processing unit designed specifically for the smartphone. Golden has demonstrated throughout this case that the Google smartphone has to be *"modified"* with Golden's patented CPUs in order to function; meaning, in order to function as a communicating, monitoring, detecting, and controlling (CMDC) device [i.e., a smartphone].

Golden's patented CPUs, or Central Processing Units, are often referred to as the "brain" of the smartphone [Google smartphone]. They are responsible for executing instructions and performing calculations necessary for the functioning of the system. The CPU consists of various components, including the control unit, arithmetic logic unit (ALU), and cache memory.

Golden's patented CPUs operates a set of instructions stored in memory, commonly referred to as a program. The CPUs fetches these instructions, decodes them, performs the necessary operations, and stores the results back in memory.

The Google Tensor is a Google-designed system-on-chip (SoC/CPU) that first began in April 2016, after the introduction of the company's first Pixel smartphone. Beginning in 2017, Google began to include custom-designed co-processors in its Pixel smartphones.

| Google Tensor "CPU" | |
|---|---|
| Google Tensor (image of chip diagram) | Google's alleged infringing smartphone device(s) must be *"modified"* by Google with the alleged infringing Google Tensor CPU; recognized as the *"brains"* of the alleged Google smartphone device(s); responsible for carrying out the operational and functional instructions of the Google smartphone device(s) in order to *"perform substantially the same function"*; in *"substantially the same way"*; to achieve *"substantially the same result"*; as Golden's patented CMDC device(s), that includes Golden's patented central processing units (CPUs). |

Golden's patented CPUs primary role is to handle general-purpose tasks that require complex calculations and rapid decision-making. The CPUs execute instructions related to operating system operations, software applications, and managing various hardware components; tasks such as running programs, performing mathematical calculations, handling system requests, and managing memory allocation all fall under the responsibilities of the CPU(s).

Golden's patented CPUs are the central components that carries out the instructions necessary for the Google smartphones to function. Without Golden's patented CPUs [invented for smartphones] the Google smartphones, would not be able to execute tasks or process data.

In *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367 (Fed. Cir. 2008), the Court determined that a claim directed to a computer processor including instructions for performing various functions was definite. These functions included "performing a Boolean algebraic evaluation," "producing an enable-write," "enabling" or "disabling," and "determining." The Court found that the claim was "clearly limited to a . . . processor possessing the recited structure and capable of performing the recited functions."

If Google and the Trial Court's non-infringement theory of "*modification in order to function*" is allowed to stand, then it must likewise be applied to apply the same theory to the "Google smartphone having to be '*modified*' with Golden's patented CPUs in order to function; and function as a communicating, monitoring, detecting, and controlling [smartphone] device".

## CONCLUSION

If Google's non-infringement theories of "'modification in order to infringe" is allowed to stand, it is only fair and just that Golden's patented central processing units (CPUs) are considered a "modification" to the Google device; resulting in the Google's Tensor CPUs infringing Golden's patented claims for central processing units (CPUs).

Golden has far surpassed the pleadings requirements with "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; and "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." This is the second time the lower court have asked Golden to prove Google's alleged infringing devices infringes Golden's patent claims at the pleading stage.

Appellant is asking the Court to remand the case back to the District Court for trial. Please honor Appellant's Seventh Amendment right to a trial by jury.

Sincerely,

*/s/ Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(M) 8649927104
Email: atpg-tech@charter.net

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4th day of January 2025, a true and correct copy of the foregoing "PLAINTIFF-APPELLANT'S MEMORANDUM IN LIEU OF ORAL ARGUMENT", was served upon the following Defendant by priority "express" mail:

Matthew S. Warren

WARREN KASH WARREN LLP

2261 Market Street, No. 606

San Francisco, California, 94114

Phone: (415) 895-2940

Fax: (415) 895-2964

Email: 22-5246@cases.warrenlex.com

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605



PRESS FIRMLY TO SEAL

PAPER POUCH

UNITED STATES POSTAL SERVICE

JAN 04, 2025

20439

$32.00

RDC 07

S2324K504193-10

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®

EI 935 866 444 US

CUSTOMER USE ONLY

FROM: (PLEASE PRINT) PHONE 864) 992-7104

LARRY GOLDEN
740 WOODRUFF RD
# 1102
GREENVILLE, SC 29607

DELIVERY OPTIONS (Customer Use Only)

X SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**

- ☐ No Saturday Delivery (delivered next business day)
- ☐ Sunday/Holiday Delivery Required (additional fee, where available*)

*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT) PHONE 202) 275-8000

U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
CASE NO: 24-2024
717 MADISON PLACE, NW
WASHINGTON, DC

ZIP + 4® (U.S. ADDRESSES ONLY)

20439-

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.

PEEL FROM THIS CORNER

PAYMENT BY ACCOUNT (if applicable)

Federal Agency Acct. No. or Postal Service™ Acct. No.

ORIGIN (POSTAL SERVICE USE ONLY)

☐ 1-Day ☑ 2-Day ☐ Military ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
|---|---|---|---|
| 29614 | 1/7/25 | $ 32.00 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 1/4/25 | ☐ 6:00 PM | $ | $ |
| Time Accepted ☐ AM ☑ PM | | Return Receipt Fee | Live Animal Transportation Fee |
| 12:03 | | $ | $ |
| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| $ | $ | | |
| Weight ☐ Flat Rate | Acceptance Employee Initials | | |
| 2 lbs. 90 ozs. | SS | $ 32.00 | |

[redacted]E USE ONLY)

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, NOVEMBER 2023 PSN 7690-02-000-9996